Connie PARRA, Plaintiff–Appellant,

v.

**TRUSTEES OF THE UNIVERSITY OF ILLINOIS at Chicago Circle Campus, Karnella Kirkwood, Marsha S. Weiss, et al., Defendants–Appellees.**

No. 00–2580.

United States Court of Appeals, Seventh Circuit.

Argued Dec. 13, 2000.

Decided Feb. 8, 2001.

Before COFFEY, EASTERBROOK, and MANION, Circuit Judges.

## ORDER

Connie Parra's supervisors suspended her on three occasions from her job with the University of Illinois at Chicago (UIC) for theft of services, insubordination, failure to follow procedures or her supervisors' directions, and inadequate work performance. Convinced that her supervisors singled her out for discipline because she is Mexican–American, Parra sued UIC's Board of Trustees under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e et seq., and her supervisors under 42 U.S.C. §§ 1981 and 1983. The district court granted the defendants' motion for summary judgment, and we affirm.

## I.

Connie Parra began her employment with UIC's Office of Student Financial Aid (OSFA) in 1990. Her first five years went well–she received four promotions, annual raises, and at least one favorable performance evaluation. By the time the events that gave rise to this litigation began to occur, Parra held the position of "Financial Aid Advisor III" and was responsible for supervising 13 full and part-time employees, processing financial aid applications, entering information into computer databases, and creating weekly statistical reports. At no time, however, was she authorized to award financial aid.

In June 1994 Assistant Director Karnella Kirkwood became Parra's direct supervisor. Kirkwood reported directly to Associate Director Freda Comer, who in turn reported to Director Marsha S. Weiss. Kirkwood and Comer are black women, and Weiss is white. Around July 1995 Kirkwood recommended that Parra receive a 6% salary increase. Parra wasn't pleased with this amount; she insisted that Weiss had previously promised her a 10% raise. Kirkwood explained that a 10% raise was not possible because the OSFA budget would not support it, and recommended only the 6% raise. This dispute resulted in some friction between Parra and Kirkwood, and subsequently Parra's work performance deteriorated. Kirkwood observed Parra making an unacceptably high number of errors in processing financial aid applications. On several occasions Parra refused to follow or respond appropriately to her superiors' instructions. Parra also at least once called in sick by leaving a message on Kirkwood's voice mail, so that no one in the office knew Parra's whereabouts. As a result, Comer and Weiss instructed Parra to speak directly to Kirkwood, Comer, or Weiss when reporting her absence. Parra, however, was convinced that other employees were not required to follow such a procedure when calling in sick. Parra also claimed that Kirkwood, Comer, and Weiss improperly prohibited her from speaking Spanish in the office, despite the fact that many students seeking financial aid speak primarily Spanish. Following these incidents, Kirkwood gave Parra a negative performance review in May 1996, citing her misconduct but not mentioning that Parra spoke Spanish in the office.

Shortly before Parra's 1996 performance evaluation, Weiss discovered that seven of the OSFA's part-time student workers had improperly received student assistance grants. Six of the seven worked under Parra, and the seventh, Cassanova Rufus, declared in writing that Parra had awarded him the money. Weiss convened an informal disciplinary meeting at which Parra had an opportunity to respond to the charge. Parra never directly denied giving Rufus the money, but rather stated her belief that others did the same and that she was singled out for improperly

awarding grants. Weiss concluded that Parra "probably" awarded funds to Rufus and suspended her without pay from July 29 to August 5, 1996.

Parra returned from her one-week suspension and continued making excessive errors in her data-entry work, engaged in additional misconduct, and was insolent and insubordinate. For those reasons, Weiss held another disciplinary meeting in October 1996 and afterward suspended Parra for 15 days without pay. Parra then filed charges with the Equal Employment Opportunity Commission, alleging that Weiss, Comer, and Kirkwood discriminated against her on the basis of her national origin by unfairly suspending her, denying her overtime pay, and requiring her to follow different absence reporting procedures than non-Hispanic employees. Upon returning to work, however, Parra began treating her employees poorly and again continued to make excessive errors and ignore orders. Kirkwood gave Parra a second negative performance evaluation in June 1997, and Weiss relieved Parra of her supervisory duties the following month and recommended a third suspension. After an investigation, Assistant Vice Chancellor Michael Ginsburg concurred with Weiss's recommendation and Weiss, after a disciplinary meeting, suspended Parra without pay for 30 days from August 11 to September 10, 1997.

Parra filed a second EEOC charge alleging retaliation. Ginsburg and Weiss then offered to allow Parra to voluntarily transfer to a position where she would no longer work under Kirkwood or Comer, be supervised only indirectly by Weiss, and receive no reduction in title, salary, benefits, or seniority. Parra accepted the offer and transferred positions on October 20, 1997. Later, after claiming that she received the same disparate treatment by Weiss that she received in the OSFA, Par-

ra transferred to a position in the Building Service and Maintenance Department, where she is currently employed.

The EEOC issued Parra a right-to-sue letter and she timely filed this lawsuit under Title VII and §§ 1981 and 1983 against UIC's Board of Trustees alleging harassment, discrimination, and retaliation. She later twice amended her complaint to name Ginsburg, Weiss, Comer, Kirkwood, and UIC Chancellor David Brodski as defendants. Following discovery, the district court granted summary judgment for the defendants because Parra failed to rebut the defendants' substantial evidence of her poor work performance and she had failed to introduce or identify any facts apart from her own speculation that similarly situated employees were treated more favorably or that her superiors retaliated against her.

## II.

On appeal, Parra asserts that she sufficiently established a prima facie case of national origin discrimination and that a genuine issue of material fact for trial exists because the defendants have made admissions demonstrating that their excuses for disciplining her were pretextual. She also asks that we remand this case because the district court violated our Circuit Rule 50 by not stating its reasons for granting summary judgment to the defendants. In response, the appellees included in their short appendix the district court's two-sided minute order containing its reasons for granting summary judgment in their favor. They request that we sanction Parra or her attorney for falsely certifying that she included the order under review and for making a frivolous argument. They further request that we summarily affirm the judgment of the district court. Parra's attorney responded by filing a motion to withdraw her Circuit Rule

50 argument and strike all responsive arguments in the appellees' brief. In the motion she did not request leave to correct her short appendix, nor did she argue that sanctions or summary affirmance were unwarranted.

██ Circuit Rule 50 requires trial courts and administrative agencies to state their reasons for resolving a claim on the merits. *Sims v. Lucas,* 9 F.3d 1293, 1294 (7th Cir.1993). The district court disposed of this case with a short but detailed opinion printed in small type on the back of a standard minute order. In an affidavit attached to her motion, Parra's counsel avers that she received only a one-sided copy of the order. A notice on the front of the order alerts the reader that the document contains information on both sides, stating: "For further detail see order on reverse side of the original minute order." But counsel contends that this instruction is "ambiguous and implies that if one were to go to the Federal District Court and look in the case file on the back of the original minute [order] one would find 'further detail[s].'" This is precisely what she should have done. Counsel certified in the brief that she complied with Circuit Rule 30(a) by submitting in her short appendix the opinion and judgment under review, but her short appendix contains only the judgment order, which is not sufficient. *See Matter of Galvan,* 92 F.3d 582, 583 (7th Cir.1996). Because counsel had the responsibility to comply with Circuit Rule 30(a), *see id.* at 583–84, and she knew she should have obtained a complete copy of the minute order prior to submitting her brief, her certification was false, *United States v. Evans,* 131 F.3d 1192, 1194 (7th Cir.1997).

██ Moreover, Parra's Circuit Rule 50 argument is frivolous. The argument has no factual basis because the district court did not violate Circuit Rule 50. In addition, Parra seeks a legally unsupportable remedy: a *full* remand for trial on the merits. The remedy for an actual violation of Circuit Rule 50 is a *limited* remand directing the lower court to state its reasons. *Western States Ins. Co. v. Wisconsin Wholesale Tire, Inc.,* 148 F.3d 756, 759–60 (7th Cir.1998); *Sims,* 9 F.3d at 1294. We therefore deny the motion and direct counsel to show cause why she should not be sanctioned $1,000 for making a frivolous argument and falsely certifying compliance with Circuit Rule 30(a). *Jansen v. Aaron Process Equipment Co.,* 207 F.3d 1001, 1005 (7th Cir.2000); *Collins v. Educational Therapy Center,* 184 F.3d 617, 622 (7th Cir.1999); *Pabst Brewing Co. v. Corrao,* 161 F.3d 434, 437 n. 1 (7th Cir.1998); *Evans,* 131 F.3d at 1194; *Hill v. Porter Memorial Hosp.,* 90 F.3d 220, 226–27 (7th Cir.1996).

Proceeding then to the merits, Parra relied on the indirect, burden-shifting method of proof articulated in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under that framework she was required first to establish a prima facie case of national origin discrimination by demonstrating that she is a member of a protected class; she was performing her job to her employer's expectations; she suffered an adverse employment action; and similarly situated non-Hispanic employees were treated more favorably. *Bell v. EPA,* 232 F.3d 546, 549–50 (7th Cir.2000). Parra argues that she established her prima facie case and contends that the district court erroneously resolved disputed material issues of fact against her. Parra, however, did not comply with Northern District of Illinois Local Rule 56.1(b)(3). This required her to respond to each numbered paragraph in the defendants' Statement of Uncontested Material Facts with the reason for her disagreement with each fact and

supporting references to the record. The defendants' Rule 56.1 statement contains 210 numbered paragraphs; Parra's response contains sixteen paragraphs, some containing facts without reference to the record, others containing legal conclusions, and none responding to those of the defendants. The district court deemed Parra's failure to deny the allegations in the defendants' numbered paragraphs an admission of those facts, and this circuit has consistently upheld the strict application of Local Rule 56.1 and other similar rules. *See Jupiter Aluminum Corp. v. Home Ins. Co.*, 225 F.3d 868, 871 (7th Cir.2000); *Schneiker v. Fortis Ins. Co.*, 200 F.3d 1055, 1057 (7th Cir.2000); *Waldridge v. American Hoechst Corp.*, 24 F.3d 918, 922 (7th Cir.1994).

Parra contends that despite her admissions, the defendants failed to demonstrate their entitlement to summary judgment because they produced no evidence showing that she was not treated less favorably than similarly situated employees. Nor, she claims, did the defendants produce statements from witnesses corroborating her supervisors' version of events. The defendants, however, do not have to prove anything; if the plaintiff establishes a prima facie case of discrimination, the defendants need only produce admissible evidence articulating a legitimate, nondiscriminatory excuse for taking adverse action. *McDonnell Douglas*, 411 U.S. at 802. If the defendants produce a legitimate reason, they are entitled to summary judgment unless the plaintiff can identify evidence in the record establishing that the reason is a pretext for unlawful discrimination. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The ultimate burden of persuading the trier of

fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff. *Id.*

■ The district court concluded that based on the uncontested facts Parra could not prove two elements of her prima facie case. Parra cites three parts of the record to demonstrate that a material factual dispute for trial exists. She first cites to her original complaint.[1] In opposing a motion for summary judgment, however, Parra could not simply rest on the allegations in her complaint, but had to affirmatively specify facts in the record showing that there is a genuine issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed. R.Civ.P. 56(e).

■ Second, she cites her own 118–paragraph affidavit submitted in opposition to the defendants' motion for summary judgment without reference to specific paragraphs within. The district court found the affidavit inconsistent with Parra's prior deposition testimony and disregarded it, and Parra has not challenged that conclusion in her brief. *See Hentosh v. Herman M. Finch Univ. of Health Sciences/The Chicago Medical Sch.*, 167 F.3d 1170, 1173 (7th Cir.1999) (arguments not raised in appellate brief are usually deemed waived).

■ Finally, Parra cites "Record Item 45." This docket entry is three volumes of materials submitted by the UIC Trustees in support of their summary judgment motion and contains approximately 108 documents, including the affidavits of the individual defendants and other OSFA employees, most of Parra's 300–plus page deposition, and supporting exhibits for each document. She has not provided citations to specific documents,

---

1. For reasons not stated, she does not cite her Second Amended Complaint, which is substantially similar to her statement of facts in her brief.

tabs, sections, or pages within Record Item 45. Parra was required to support her arguments with citations to the parts of the record on which she relies. Fed. R.App. P. 28(a)(9)(A). We do not comb appellate records searching for grounds for reversal. *Hulbert v. Wilhelm,* 120 F.3d 648, 657 (7th Cir.1997); *Bonds v. Coca–Cola Co.,* 806 F.2d 1324, 1328 (7th Cir.1986). Without some citation to facts in the record supporting her arguments, Parra has not developed a factual basis for us to pass on whether the district court erred in determining that she failed to make her prima facie case of national origin discrimination and has waived her argument on appeal. *See Bonds,* 806 F.2d at 1328. And although we need not look to see whether the defendants' articulated reasons for suspending Parra were pretextual, *Coco v. Elmwood Care, Inc.,* 128 F.3d 1177, 1180 (7th Cir.1997), we are convinced that the overwhelming evidence in the record of Parra's poor work performance and misconduct demonstrates that they were not.

### III.

Parra's motion to withdraw her Circuit Rule 50 argument and strike all responsive pleading is DENIED. The judgment of the district court is AFFIRMED. Attorney Sharon E. Williams is directed to SHOW CAUSE why she should not be sanctioned $1,000 for falsely certifying compliance with Circuit Rule 30(a) and making a frivolous argument on appeal. The response to our Rule to Show Cause is due fourteen days from the date of this order.